**Jesse J. HOUSE, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, Nashville.

Oct. 1, 1979.

Permission to Appeal Denied by Supreme Court Dec. 10, 1979.

James B. Bell, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., Richard S. Maxwell, Asst. Atty. Gen., W. Bracken Ingram, Research Asst., W. Edward Barnard, Victor S. Johnson, III, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

O'BRIEN, Judge.

Defendant appeals from his conviction as an aider and abettor to second degree murder and also for assault with intent to commit robbery by use of a deadly weapon. The respective sentences of fifteen (15) years, and not less than five (5) nor more than fifteen (15) years, were fixed to run concurrently with each other but consecutively to a previously imposed sentence on a prior conviction.

Error is claimed on denial of a motion to suppress an extrajudicial confession made by defendant.

At a suppression hearing the State's evidence indicates that on October 6, 1976 defendant was being held in the Metro Nashville Jail on other charges. At approximately 8:00 o'clock in the evening he was brought from the jail to police headquarters for interrogation relative to the offense for which he was convicted. He was fully advised of his rights and declined to sign a written waiver form although indicating his understanding of its contents. He was advised of the offense which was under investigation and denied any knowledge of the homicide or the robbery. He did not request to see or confer with an attorney although previously he had done so on other matters during line-ups and similar procedures. Defendant was shown some of the evidence gathered in the course of the investigation and informed that a co-defendant had made a confession implicating him in the offense. Defendant was given the opportunity to talk with this co-defendant privately. He then indicated his desire to make a statement. In the presence of the co-defendant and two police officers the procedure for taking his statement was explained to defendant and the Rights Waiver Form was read to him again. The form was signed by defendant prior to taping his statement. He admitted his complicity in the robbery but denied any involvement in the homicide which occurred while the robbery was taking place. Defendant confirmed in his statement that he had not been coerced physically or otherwise, that he fully understood his rights, and the consequence of his signature on the waiver form. The tape was played for the benefit of the trial judge but has not been included as an exhibit to the record in this Court.

On the other hand defendant testified that it was past midnight when he was taken from his cell to an investigating room where he was shown two pairs of shoes and a .22 caliber pistol. One of the officers shouted at him to the effect that they knew he was involved in a first degree murder. He asked to call his attorney and informed them of his name. He was not allowed to do so. He was kept in the investigating room by two officers for two or three hours. He initially declined to sign the waiver form and kept telling them over and over that he wanted to talk to his lawyer. The officers kept repeating to him the facts and circumstances of the homicide. One of the officers pushed him back down and he was slapped after he had jumped out of a chair. He was threatened with the prospect of not ever seeing his wife and child again. During all of this time he kept insisting he wanted to get in touch with his lawyer. Eventually he made a statement containing the information related to him by the officers.

At the conclusion of the hearing the trial judge overruled the motion to suppress without further comment. There is no order in the record denying a motion to suppress although we do find a subsequent order denying an application to reconsider the suppression motion. It would be of great assistance on appellate review as well as a great conservation of judicial time,

both in this Court and at the trial level, if trial judges would set forth their findings and reasons for their actions in cases of this nature. Were we not able to glean from the record the factual basis for the trial judge's decision in overruling the motion to suppress it would be necessary to remand the case to the trial level for completion of the record. Such procedures are profligate of judicial time and energy when the courts struggle daily to keep abreast of the ever increasing case loads in criminal matters.

■■■■ The trial court's determination with reference to compliance with the *Miranda* mandate by the investigating officers and the voluntary character of the statement made by the defendant during custodial interrogation is conclusive unless the appellate court finds the evidence touching these matters preponderates against the lower court judgment. See *Braziel v. State,* 529 S.W.2d 501, (Tenn.Cr.App.1975). Although the trial judge did not make any findings in this case, the record clearly shows numerous corroborating circumstances to sustain the State's evidence concerning the taping of his statement. All of the documentary evidence filed as exhibits corroborate the police officers' version as to the date, time and place when the confession was given. These instruments confirm that the entire interview with defendant took slightly longer than an hour with the actual taking of his statement confined to an interval of approximately sixteen minutes. This conflicts diametrically with defendant's version of the events. He does not deny his co-defendant was present at the time of his interrogation but he totally contradicts the police officers' testimony regarding what took place. His co-defendant was not called to verify or dispute the evidence of record, or to describe his emotional or physical condition, or to offer any other testimony relative to the occurrence. The trial judge had the benefit of listening to the tape recording and so was able to judge the tone of defendant's voice, his manner of speech, whether he spoke calmly or appeared to be in distress, or if agitated in any manner in contrast to the way he appeared, talked, and conducted himself at the suppression hearing. Where interrogation takes place after a defendant has been advised of his right to counsel and against self-incrimination a heavy burden is imposed on the government to demonstrate that any counselless statement given by him was given with a knowing and intelligent waiver of those privileges. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, p. 1628, 16 L.Ed.2d 694 (1966), we are satisfied that the evidence introduced at the hearing on the motion to suppress the evidence preponderated in favor of the State's witnesses, and against defendant's version of the events surrounding his confession to the police officers. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). Defendant takes the position that his original refusal to sign the written waiver imposed an additional burden on the State to demonstrate a knowing, intelligent and voluntary waiver of his rights. This record shows that no extensive subsequent interrogation took place, defendant's protestations to the contrary notwithstanding. Both our State and Federal Courts have held that a waiver may be inferred from the facts of the case and proof of an affirmative statement by the defendant to that effect is not essential. See *Bowling v. State,* 3 Tenn.Cr. App. 176, 458 S.W.2d 639 (1970) and *Braziel v. State,* supra. In *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the Court held that rather than an inflexible per se rule the question of waiver must be determined on the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. That although the courts must presume a defendant did not waive his rights, and the prosecution's burden is great to prove otherwise, at least in some cases waiver can be clearly inferred from the actions and words of the person interrogated. In *Fare v. Michael C.,* —— U.S. ——, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the rule is reiterated that the totality of the circumstances approach is adequate to determine whether there has been a waiver of Fifth Amendment rights. We find in this record, as did the United States

Supreme Court in *Fare,* supra, that upon review of the entire record this defendant's claims of coercion are without merit. The police took care to inform him of his rights and to insure that he understood them. The officers did not intimidate or threaten him in any way. Their questioning was restrained and free from the abuses which concerned the court in *Miranda,* supra, and although the police did indicate that a cooperative attitude would be to his benefit their remarks in this regard were far from threatening or coercive. There is no evidence in the transcript of the tape recording of defendant's confession to indicate that he was under duress of any nature whatsoever. Although the opinions in both *Butler* and *Fare* were rendered long after defendant's conviction trial, the intent and purpose in their publication is to consider the reach of *Miranda,* and to elaborate on a proper understanding of the intent of that decision. We consider them controlling and overrule the assignment on the basis of both the Federal and State decisions we have cited.

■ We do not find error in the trial judge's decision to fix defendant's sentences to run consecutively to one previously imposed in an unrelated case. The trial judge found defendant to be a dangerous offender under the criteria set forth in *Gray v. State,* 538 S.W.2d 391 (Tenn.1976). The record clearly shows the defendant, by his own admission, had been previously convicted for homicide and that he was presently in jail on an unrelated armed robbery charge. We overrule the assignment.

The judgment of the trial court is affirmed.

DAUGHTREY and BYERS, JJ., concur.